please be seated. Our third case is United States v. Craig 22-4230. Mr. Becker. Thank you, your honor. Good morning, judges. Appreciate the opportunity to argue this case on behalf of my client Mr. Dehaven. The issue before the court in this case is whether the government violated Mr. Dehaven's plea agreement. And that issue arises because at sentencing the government argued for two enhancements which were not based on facts that were contained in the party's relevant conduct stipulation and the plea agreement. Specifically the two enhancements that are at issue, one being the question of whether the firearm that Mr. Dehaven possessed was stolen, and then secondly, whether that firearm was possessed in connection with another offense, namely drug offenses. Your honors, this Court and other courts have repeatedly noted that these plea agreements are to be construed in accordance with standard contract law principles. One of the main principles that governs whether these plea agreements, how these plea agreements are interpreted, is what is the reasonable understanding of the defendant at the time that he or she entered their plea. And in this case, your honor, it is our position, Mr. Craig's position, that at the time that he entered his guilty plea, he reasonably understood that the government would not seek to enhance his guideline range based on the two enhancements that I just mentioned. So why is that? I mean, the paragraph 9 doesn't use the words total relevant conduct, does it? It does not, your honor. That was something that was used by a term that was used by the government during the Rule 11 hearing for Mr. Craig, as well as the court during the Rule 11. I get the argument that those, that the Rule 11 call of plea and the discussion there affected things. But if we're just looking at the agreement itself, is there a reasonable basis to, I mean, people can stipulate this stuff all the time. That doesn't mean you're not going to talk about other issues. Why, under the agreement itself, would it be reasonable to assume there's not going to be other information or even enhancements argued? Well, your honor, I think the answer to that question, one, goes to a little bit of background about the two enhancements that were at issue. Mr. Craig had been involved in a control by a month or so prior to his arrest for possession of the firearm. Because that control by occurred in a time that was distanced from his actual possession of the firearm, when he signed the plea agreement, it's my belief that he reasonably understood, because the government had not asserted in the statement of facts that there was a connection between his drug activity and the gun, that that would not be sought. The same being true with regard to the firearm, as the Court saw in our briefing. The firearm, and this is being charitable, at best there was very little evidence that it was actually stolen. And the evidence that it was stolen was subject to, I believe, and we pointed this out to district court, it was not credible, because of the general. But it may be. I understand that position. But at the plea hearing, the government put up a witness to talk about it, and you cross-examined them. So, you know, it doesn't seem like it's a shocker that that information might come up at some point. I'm not sure that answers the question is fatal to you, but whether it's a good evidence or, you know, ambiguous evidence or bad evidence, it seems like it was something that was, you know, that your client had a reason to suspect was out there as a possibility. Or tell me if I'm wrong about that. I think, yes, he did have a, he could have expected that was a possibility. However, Your Honor, to get back to your original question, I think the other factor that makes the argument that he had a reasonable understanding that the facts for his sentence would be based on the stipulation alone was that the plea agreement, as the Court will see, has seen, references the guideline sections concerning the procedures for plea agreements. Now, I understand those sections are policy statements. Nevertheless, the plea agreement cited it, and that section specifically states that if the parties have a reasonable dispute about a particular enhancement or relevant conduct, it should be stated in the plea agreement. That's your best argument on the terms of the document, isn't it, that it incorporates that? I think so, Your Honor. Did you make that argument in your briefs? Yes, Your Honor, I did. I did make that argument. It is argued in the briefs that that was one of the factors that caused Mr. Craig to have a reasonable understanding that his plea agreement encompassed all of the relevant conduct. Now, obviously, as you just pointed out, things changed somewhat, or at least there were additions to the record or to the plea agreement, in our opinion, that occurred at the Rule 11 hearing. And at the Rule 11 hearing, the government, as we said, used the phrase total relevant conduct, as well as the Court, in questioning Mr. Craig. So based on those statements, coupled with what I just discussed, at that point in time, which was immediately prior to him entering his guilty plea, he had the reasonable understanding that his total relevant conduct was limited to what was in. Now, going back to your point, Your Honor, about the officer who testified about the firearm, what I would only point out there is that after he testified, of course, we cross-examined him. And in my opinion, based on what he all but admitted, that they did not have a credible or at least a solid case that this firearm was stolen. So at that point, given what Mr. Craig was told about total relevant conduct, in his eyes, the discussion regarding the firearm being stolen was just dicta, so to speak. And also, it was something that, even by the own officer's own admission, was something that was perhaps not credible. Do you agree, Count? Let's assume you prevail and we vacate and send this back and order specific performance. It sounds like you agree from your briefs that that wouldn't stop either the government or probation from notifying the sentencing judge about this conduct, correct? I think the government, yes, Your Honor, has that obligation of candor to the court and through the probation office as well. What I would just say to that, though, Your Honor, is I don't know for a fact what was originally provided to the probation office. What I do know, based on the PSR, is that the statement that was provided to them by the government, although it referenced drugs, did not relate the drugs directly to the firearm and had no reference whatsoever to the firearm being stolen. So the other thing I know about the PSR is that in the PSR, and I don't recall the exact paragraph, but there is a statement by the probation officer, which is customary, that they conducted their own independent investigation. Typically, that means the government provides them with the investigatory file, they review it along with the statements provided by counsel, and reach their own conclusions. So what I would say to your question, Your Honor, is yes, the government either has already provided that information to the probation officer and met its obligation. If it hasn't, then it does have the right to do it, which it already did. However, if this case were remanded, it seems to me that the obligation of the government at that point, having met its duty to the court, candor to the court, is to not advocate for those enhancements, but to advocate for a sentence based on the relevant conduct that was agreed to by the parties. So you think the government would have to advocate for, I appreciate the argument that they would not be able to advocate for the enhancements. You said one more step, I think, that you effectively advocate against any enhancements. If the PSR, for example, recommended them or the sentencing court raised that possibility. I think that's correct, Your Honor, under the plea agreement that the government would at that point not, at best, I think they would have to remain silent as far as those. I think that's the more reasonable view of things, because it certainly doesn't say that the government can't, you know, is bound to advocate against an enhancement. The agreement doesn't say that. And I don't disagree with that, Your Honor. If I said that, I misspoke, Your Honor. But the effect of that is you got a downward enhancement or downward variance after, you know, the application of the enhancement. So, you know, you're rolling dice a little bit that you won't get the enhancements, but likewise, that you, you know, that variance wouldn't come back. There is a risk of that, certainly, Your Honor. The, let me, let me just add this, too, with regard to how the process played out. As indicated, the government submitted a statement for the PSR, which was consistent, we believe, with Mr. Craig's understanding. And that, that submission by the government, as well as the probation officer's independent review, produced a guideline range of 57 to 71 months. At that point, everything had been consistent with what Mr. Craig reasonably understood. However, at that stage, the government then objected to the PSR. The way we view it is, in essence, the government objected to its own version of the offense. And as a result, the probation officer then turned around, added the enhancements, and it nearly doubled Mr. Craig's guideline range from 57 being a low end to 100 being the high end. Can I ask a question aside from that point?  If the paragraph 9 didn't reference the guidelines, and we didn't have those two references to total relevant conduct, all we had was basically, we got stipulation on these facts. I know that's not this case, so you don't need to tell me we got more here, but I understand that. But just on those facts alone, would there be anything about what happened here that would breach the agreement? We just stipulate on facts 1, 2, 3, 4, 5. We don't say that's everything. That's just what we agree on. But then we come in in sentencing and say, hey, I agreed to those things. I never said there weren't more. Here are the other things we want to enhance. I don't think we'd be here today, Your Honor, if that were the case, to be quite honest. I think this case, the argument that Mr. Craig has is bolstered significantly, I believe, based on the course of performance of the government, the statements made by the government at the Rule 11 hearing, and then the fact that the government, in its initial presentation to the probation office, produced a statement which we believe is consistent with Mr. Craig's reasonableness. Does it matter that, and you don't need to accept this characterization, but the facts that it appears were stipulated to in paragraph 9 all have to do with the basis for the plea? In other words, it's sort of a shorthand way of persuading the district court that there's a factual basis for the plea and nothing else. That's what the government would say, and it never intended to go any further. Your Honor, if it were not for the additional reference to the guidelines section, stating that, the section stating that disagreements with regard to the guidelines should be incorporated in the plea agreement, if it were not for that, I would agree with you. Point well taken. But I think with that reference, and again, of course, with what happened after that, Mr. Craig's reasonable understanding, whatever it may have been at the time he signed the plea agreement, at the time he entered his plea was that that relevant conduct was the relevant conduct that would be relied upon to impose his sentence. So for those reasons, Your Honor, Mr. Craig would ask the court to remand for resentencing. Thank you, Mr. Beck. I'm not going to try to butcher your name, so I'll let you introduce yourself. Thank you. I made it difficult by hyphenating after I got married, but may it please the court. Good morning, Your Honors. I'm Laura Umspotiker. I represent the United States, and this court should affirm for two reasons, but honestly, I think the breach of the plea agreement is dispositive of the second issue raised about whether there is a preponderance of evidence, because if the court finds a breach, then, of course, the government can advocate for that, and the district court would have to make its own findings. But if the court finds that there is no breach here, then the appellate waiver, I believe, would be dispositive. So I'll just focus my argument on really the crux of the issue, which is the breach of the plea agreement, alleged breach. The government argues it did not breach its plea agreement with Mr. Craig. Primarily because, as Judge Diaz noticed, and what the government's going to argue is, our factual stipulation was limited to the statutory elements of 922G1 to set forth a factual basis for the court and nothing more. We agreed to certain facts that were not in dispute by the parties, and then that left open, and the agreement was silent as to whether other facts and legal arguments could be made at sentencing. Can I ask about the pursuant to language? Because without that sentence, you would have a great argument about that, that this is the factual basis for the plea. But 6B1.4, the guidelines provision, that's about facts relevant to sentencing, right? And then 1B1.3 is relevant conduct for sentencing. It's not limited to the factual basis for the plea. So what does the government think it means to add that introductory language? Pursuant to these two guidelines provisions, we stipulate the following. What is the government's position on what that language means? Our position are those are the guidelines that would be relevant at sentencing for the court to consider. So certainly 1B1.3, 2K2.1, it's the guideline that we're under. And also the guideline that brought forth the facts that we're going to have potential enhancements or adjustments under the sentencing guidelines. And then, of course, 6B1.4. And I do note that the defense is raising the 6B1.4 argument here on appeal. It was not raised before the district court at sentencing. Primarily, the defendant relied on United States v. Edgell in their argument. But aside from that, in looking at 6B1.4, the commentary that is being relied upon, certainly there's commentary under 2K2.1 that would conflict with that, stating you have to consider these facts for enhancements. Well, it's not just the commentary. 6B1.4 itself says the government and the defendant can, they don't have to be right, you're not bound by these guidelines, but they can enter a stipulation about all the conduct relevant for sentencing. And if they do, it needs to be complete. And if they have any disagreements about any of those facts that are relevant for sentencing, they need to flag that in the agreement. So you wouldn't be bound by these requirements unless you cite to this provision. But when you say pursuant to this provision, we're stipulating as follows, does that mean we interpret the stipulation through the eyes of that guideline provision? I would say no, because I believe the conduct on both sides had a different understanding. And what really undercuts the defendant's argument on 6B1.4 is that he objected to the base offense level interpretation. Clearly, we stipulated to the aiding and abetting possession with intent to distribute as the prohibiting conviction. But then you see the defendant filing an objection wanting to argue that and its characteristics. So on the flip side of that, if the defendant found that 6B1.4 was all-inclusive, and that we needed to flag any facts in dispute, then that creates an issue on the defendant's side of why was an objection filed to be able to argue the base offense level and the proper, here, whether it was a controlled substance offense before the district court. So I think it cuts both ways on that. Certainly, if that was the intent of the defendant, then his own actions seem to rely on a different interpretation. I just want to make sure I know what the government's position is on what this language means. When the government puts in this language at the beginning of the stipulation, pursuant to these two guidelines provisions, the parties stipulate X. What is the government's position on what that means? I would say at the time of this agreement, when we are incorporating the relevant sentencing guidelines to rely on, it's ones for the court to look to. And certainly the court can agree, not agree, but it's ones that were contemplated in formulating those agreement of facts. I would say with that that not every single- I'm not sure I understood that. Could you repeat that? I think that's important, and I'm not sure I understood it. Could you just say it one more time? Yes, Your Honor. I believe that the intent would be that these are the guideline provisions that would be looked upon or discussed at sentencing. So, for instance, 2K2.1 is relied on because it's the firearms. We didn't cite 2D1.1 for drugs. So it's just whatever would be relevant in the discussions for the court at sentencing or for the parties. So you're basically saying then it doesn't have a lot of meaning. Whatever we argue for the guidelines based on facts in there or out there, those are the guidelines we're saying. Anyway, I'm not sure it's doing much or a lot under that viewpoint. I would say that was certainly the intent at the time of the plea agreements. That was very standard in all of the ones in the Northern District of West Virginia to include 1B1.3, 6B1.4, as well as in whatever the relevant offense characteristics. You know, even the question I'm wondering about, I mean, we look at these, I think. Please tell me if I'm wrong here under contract law. Correct. And typically under contract law, we don't really talk about intent unless something's ambiguous. And so the question would be, is this ambiguous? And only then would you go look at someone's intent. That's extrinsic evidence outside the contract. And I think law is, if it's ambiguous, we construe in favor of the defendant here. So I'm just trying to figure out how, given the reference here, it may have been common, but it says what it says, and it sounds like your agreement is contrary to the text of the guidelines and its commentary. Well, and the commentary, when we're incorporating it, I don't necessarily know that the commentary, because it would be contradictory under 1B1.3 sometimes and 2K2.1 and 6B1.4. There's a lot of commentary that I think wouldn't always be perhaps consistent. So it's more of those were the relevant guidelines that were considered for the factual stipulation here. So is it the case that if Paragraph 9 did not have that introductory phrase, pursuant to Sections 6B1.4 and 1B1.3 of the guidelines, if we just cut that out and start the sentence, the next word, the parties hereby stipulate and agree that it would mean exactly the same thing as you're saying it means now. I would agree, because under the sentencing guidelines, I believe that that was incorporated to provide definitions as to what relevant conduct is, and that was the intent behind it. And I agree that we're getting into the plain language. But is that a contract interpretation? A normal principle is that words are included for a purpose, and it should give us a little pause, I think, if the interpretation you're arguing is these words have no meaning. It would mean the same thing if you took the words out, especially when the introductory phrase is pursuant to, which would seem to suggest an attempt to comply with certain guidelines, don't you think? I would agree that it's an intent to comply. The focus would be on the actual guidelines is what I would argue rather than the commentary, because I believe the commentary is what says that all facts not in dispute should be noted, and it's not the actual text of the guideline itself. I think it's B, Section B, to the extent the parties disagree about any facts relevant to sentencing, the stipulation shall identify the facts that are in dispute, right? I would agree. I believe in the appellant's brief they cited it as commentary as well as 6B1.4 to highlight that section in the opening brief. Yeah, but it's just in the text of the guideline, 6B1.4B. My understanding was that the commentary is what provides more of the interpretation of what that is, so that would be my argument. Well, let's talk about the text of the guideline for now. To the extent the parties disagree about any facts relevant to sentencing, the stipulation shall identify the facts that are in dispute. That doesn't seem ambiguous. We may not even need commentary to help us understand that. Correct. Under that, then my argument is the same, that the parties' conduct anticipated and contemplated different meaning, because the defendant objected to the exact facts that we stipulated in regards to the underlying conviction. That's getting to the problem Judge Quattlebaum pointed out, that when we're looking at interpreting a legal text, we don't usually jump to, well, what did the party's post-contract behavior tell us about their intent? We look first at the four corners to see if it's ambiguous. Agreed, but by looking at the conduct of the parties, then I would argue that both parties breached the agreement by following objections, because we're then not putting forth every view. Did you make an argument that you get to breach because Mr. Craig breached first? You haven't argued that, have you? I have not. I would think it goes more to a meeting of the minds than on the agreement and whether there was an agreement at all, going back to contract law. And perhaps then the remedy is to void the plea agreement and renegotiate, because if there is no meeting of the minds as to paragraph 9 of the plea agreement, and my argument isn't that we breached, they breached, but it's more of the intent and conduct of the parties. If truly we're trying to incorporate 61.4 to flag anything irrelevant for sentencing that's in dispute, then both parties failed to do that and didn't have that interpretation. And that's what my argument is. It's evidenced by the party's conduct. Can I ask you about, Judge Quattlebaum asked you about the pre-trial agreements, generally subject to contract law. We've been talking about contract law, and if there's an ambiguity, it's construed against the government typically. And to the extent we look to intent, what are we to make of the fact that at the Rule 11 hearing the government, again, just confirmed that the agreement meant what it said, that the government stipulation was intended to encompass total relevant conduct? I would disagree that the government confirmed. Well, let me read this from the courts. After the government spoke, the court then addressed the defendant. Do you understand that under the terms of the plea agreement, you and the government have stipulated and agreed that the total relevant conduct of the defendant with regard to the superseding indictment is, and then he recites the stipulation. And then he says later, do you understand that to be relevant conduct, that to be the relevant conduct set forth in the plea agreement? That seems pretty clear to me. I would disagree that that's pretty clear. And in the context that that arose, in summarizing that paragraph, and the entirety of it. This is you. It is, yeah. And I can tell you what my intent was at the time. When I'm using the word total, it's more of the total agreed upon facts. For instance, in a drug plea with 2D1.1 and the stipulation of the base fence level, we're agreeing to the total drug relevant conduct. We still retain our right, then, at sentencing to argue for stash house enhancements, firearm enhancements. And the defendant retains their right to argue for adjustments in roles, such as mitigating role, minimal role, anything like that. And in handling this plea, it was summarized the way that all pleas are summarized. And, yes, now reflecting on the total and the fact that that was brought up, I make a conscious effort to stick to the verbatim of the plea agreement. But in looking just at the context, it's a government shorthand summary. It's not a verbatim reading. And even after that, the defendant had to say and agreed that there was no other plea agreement other than what is in the written plea agreement. Even after hearing that oral insert by myself and by Judge Trumbull in summarizing Paragraph 9, he still agreed that his plea agreement was the written document and not any oral modifications. Why would that hurt him? I think he would say, absolutely, that's what I agree to, because this says, pursuant to the guidelines, this is everything about the conduct that will relate to sentencing, and there's no disagreements pointed out. And then on top of that, both the government and the court said this is the total relevant conduct. So I think Mr. Craig would say, absolutely, there was nothing else. There's just a disagreement about the effect of this. Well, I believe in adding an oral modification to the agreement, it has to be sufficiently pervasive. What's the oral modification? To total. Because my argument is that the plain language did not include total. So then in looking at the oral summary, it would be an oral modification of a written plea agreement or an attempted one. And if you look at the actual plea agreement, there is a mistake on his middle name that was crossed out and initialed by the parties. Whenever there is an agreement, and I say that under contract law, I believe you also look at the pattern and practice of the parties. And here, the fact that that was initialed because it was a mistake, it was corrected on the record, and then initialed by all parties, when there is an oral modification or some type of modification after that agreement is signed, that is the pattern and practice to correct it and interpret that and include it into the written agreement. So I do think that that's important as well, because there is no such oral modification here that was then incorporated into the written agreement and initialed by all parties. And that modification to the plea was actually highlighted by Judge Trumbull in part of the plea colloquy to make sure that there was no additional agreements, there was no additional interpretations or changes other than what was in the written plea agreement at this point. Additionally, I would argue that this was never brought up before the district court at sentencing either. If there is any type of reliance by Mr. Craig on this, almost a promissory estoppel type of claim that we made an additional agreement, where is the reliance? Where is the evidence in the record? None of this was brought before the district court that, using the word total or including 6B1.4, changed his understanding of what corrective action. Did he argue that the government breached the plea agreement? He says, this is not, we stipulated to certain facts, and the government is going beyond that. And encompassed in that is an assumption that what's in that paragraph is all that the government's allowed to advocate for, the only facts that are relevant to sentencing. But the context of that argument was under Agile, that we agreed to something, and then, as far as the statements in there, and then contradicted that. Never was it raised that the interpretation Mr. Craig had was total. That seems to be the first, Agile is kind of the second step of this analysis, isn't it? That the first step tells us, what does this paragraph mean? Does this paragraph mean to limit the universe of facts? And that's where we look to what the paragraph says, which includes the guideline language. And then the second step is, now that we know the paragraph perhaps limits the universe of facts, Agile tells us what the implications of that are for a breach and for what we do in response to it. They go together. Agile doesn't tell you how to read the paragraph. Correct. But I guess it also argues whether you're going against it. And I agree that that's the second step. But turning back then, I guess the argument would be under 6B1.4, and I think that's what the Court is most concerned with. That's my interpretation of your questions is that 6B1.4 is the concerning part of the plea agreement. And, again, none of that was just raised for the Court to consider below in the argument of breach. Everything was not on the fact of how that was interpreted. It was that the government went and argued for these additional enhancements. And I understand the Court's concern. But looking back at the record, you know, it's just devoid of the fact that that was Mr. Craig's interpretation. So I think, I assume, I'm taking your point that the guideline issue wasn't raised below. But below the, so are you suggesting that's a waiver issue? I'm trying to get your, I mean. I would. I mean, the defendant raised that this is outside paragraph 9. I don't think there's any question about that.  We can debate whether they made the specific argument about the guidelines. Maybe that's encompassed by talking about that paragraph. Maybe it's not. But I just want to understand your argument. Are you saying that it's waived and we can't consider it now? I would argue that it's waived. And the fact that Chief Judge Clee didn't have the opportunity to address that argument either. It was totally framed under EDGIL, which is why he found that there was no breach. And I do think that part is concerning, that the district court didn't have all the arguments before it to consider whether there was a breach and perhaps take a different route with sentencing because this argument was squarely addressed at sentencing. In addition to that, I would incorporate the fact that there couldn't be any reliance by Mr. Craig on the two oral representations because that wasn't even raised at the district court ever. I just, I read your briefs on that and I was thinking about it. I mean, we have a whole body of law that, you know, has certain requirements about how you do these colloquies. And, you know, and it seems to be based on the understanding that if you follow these, you know, protocols for the colloquies, it's valid and shows knowing involuntary. But if you don't, it's not. So it seems odd to me if you're going, it seems like we assume that if the protocols are followed, you know, they are being relied on. I mean, in other words, why do we scrutinize things so closely if there's a deviation? If now you've got to go back and say, well, you know, I relied on that specific comment. I mean, I'm not necessarily, it seems like that's undermining the way we do, the way we look at Rule 11 colloquies. I would disagree because I feel like the prior case law was that it had to be something that was sufficiently pervasive. Otherwise, two, a post hoc interpretation of a plea agreement raised for the first time on appeal, in my view, completely could undermine a Rule 11 plea hearing without actually showing, and I've ran over time. May I finish? Answer the question, yes. Thank you, Judge Diaz. The problem is, I think from a policy, is the implications that it could have on the Rule 11 plea, that for issues never raised before the district court to address that sentencing and really hit the issue square on so we're not here, those should be raised below. And the fact that the commentary of adding in the oral modification with the two brief comments about a total, both by myself and Judge Trumbo, I take full responsibility for inserting that. It's never brought to the court's attention. So if it was so pervasive that it changed the understanding of the written plea agreement, why was that not brought up that that's what the defendant relied upon? And it wasn't brought up until the transcript was ordered and the briefs being prepared before this court. And I think that's really the government's issue that these issues should be brought before the district court so Chief Judge Klee would have had an opportunity to fully address all of the ramifications of the breach argument. All right. Thank you, counsel. Thank you, Your Honors. Your Honors, if I may briefly just address Ms. Omspadaker's argument with regard to essentially I think it would be called a mutual breach in her opinion. She, we disagree with that. And the reason being, if you look at paragraph 9 of the plea agreement at Joint Appendix 269, the agreement was that, according to that, that Mr. Craig possessed a firearm after having been sustained a felony conviction. What happened in relation to the plea agreement is it assessed Mr. Craig with two felony convictions, and therefore his guideline level was 24 as opposed to what I believe it would have been 20 had it only been one conviction. So there was no contest by Mr. Craig that was contrary to the plea agreement. He was only arguing that he only had one prior felony conviction. That issue is not before the court, however, because the court subsequently decided the Campbell case, which negated Mr. Craig's argument completely. But again, his argument was not that the stipulation was not correct. It was simply that he had only one felony conviction. Could you address the argument that the sentencing guidelines incorporation in paragraph 9 wasn't raised before the district court? Well, Your Honor, I was just, as the Sunspot article was presented, trying to find a specific reference. I frankly recall making a reference to that section during the sentencing hearing. If I did not, I know it was raised, or at least the guidelines were raised in the objections to the PSR, that the government's response to the PSR was contrary to the relevant conduct stipulation. And I'm not saying I look for it. I asked you about the briefs in your first time up here. I think I was intending to ask about what happened below because I didn't see anything about the guidelines reference in the paragraph 9 argued below. I may have missed it, too. And if that's true, I'm just trying to say, do you have a position about whether it's waived or whether it's sufficiently preserved? What's your position? If it wasn't raised, Your Honor, and I think it was, but I honestly can't put my hand or finger on it right now. If it wasn't raised, I don't think it was waived for this reason. Again, the objections to the PSR clearly stated that this was a enhancement and arguments by the government were inconsistent with the stipulation. And I do know that the – I know for a fact that the objections reference Chapter 6 of the guidelines, whether they reference specifically the section that you're talking about, Your Honor, I don't recall. But I think any fair reading of his objections would indicate that he was taking the position that this enhancement or these enhancements were inconsistent with the party's agreement pursuant to those guideline sections. So I hope that answers your question, Your Honor. Lastly, I would just say that there is a tremendous amount of importance, rightfully so, to the Rule 11 hearing. It is often considered the end all of these cases because defendants will argue that their plea agreement, despite the waiver of appellate rights, allowed them to appeal. And this Court will look at it and say clearly the Rule 11 hearing indicated this individual knew that they did not have that right. They waived that right. Here we have the opposite where the Court, the authority on whether Mr. Craig understood his rights, told him that he was pleading pursuant to a plea agreement that encompassed his total relevant conduct. So for that reason, Your Honors, the sanctity of this Rule 11 hearing, in our opinion, should require that the Court remand this case for resentencing. And again, thank you for the opportunity to argue this case. Thank you, Mr. Beck. I note that you are court-appointed. I want to thank you for taking on this appeal, helping us navigate this tricky issue. And thank both counsel for their arguments this morning still. We'll come down and greet you and then move on to our final case. Thank you.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Allison J. Rushing